Sylvia DOWNES, Plaintiff-Appellant,

v.

Marguerite BEACH and Robert Doty, Defendants-Appellees.

No. 77-1535.

United States Court of Appeals, Tenth Circuit.

Submitted Sept. 28, 1978.

Decided Nov. 30, 1978.

LOGAN, Circuit Judge.

This is an appeal from a judgment entered in a suit commenced under 42 U.S.C. § 1983. Allegations were that plaintiffs, including Sylvia Downes, had been discharged from their employment as nurses by the Las Animas-Huerfano Counties Health Board for exercise of their First Amendment rights. The trial court granted a motion for summary judgment in favor of defendants-appellees Marguerite Beach and Robert L. Doty, the responsible supervisory officers, and against Ms. Downes.

The only question on appeal is the appropriateness of the grant of the motion for summary judgment under the circumstances of this case.

Downes and the other plaintiffs had been employed as nurse practitioners by the Las Animas-Huerfano Counties Health Department in its Children and Youth Project in Trinidad, Colorado for several years. Conflicts arose between these nurses and their supervisors over the working conditions and administration of the project. In a letter

dated March 14, 1975, signed by several employees, including Downes, a "sick out" and mass resignations were threatened if certain demands were not met. The other nurse plaintiffs participated in a "sick out" on March 26 and 27, 1975, and were fired. In an action they brought in the federal district court five other nurse plaintiffs received jury verdicts totalling $4,550 against defendants Beach and Doty. Responding to a motion for new trial the court found that the "sick out" was not constitutionally protected free speech, and entered judgment n. o. v. dismissing those plaintiffs from the case. They have not appealed.

Ms. Downes, not an original plaintiff, was allowed to join that suit after it was commenced. The jury brought in a verdict in her favor for a total of $14,000 against Beach and Doty. The court granted a motion for new trial on the Downes claim, stating that although she was absent from work on the "sick out" days she had testified that she had obtained actual sick leave authorization, had a doctor's appointment, and missed work until April 21, 1975 because of emergency surgery. The judge said it was not clear from the record whether she had resigned upon discovery that her co-workers had been fired, or had been dismissed. Then the order stated:

Beside the fact that it is not clear whether Sylvia Downes resigned or was dismissed, the First Amendment issue remains viable only in her case. This fact is of greater significance to our decision to grant her a new trial. If she did not participate in the "sick out," we cannot hold as a matter of law that Defendants dismissed her for a constitutionally permissible and sufficient reason. The jury was told that they need only find that the termination of Plaintiffs was based in part upon constitutionally impermissible reasons. Assuming that Sylvia Downes was dismissed for constitutionally impermissible reasons, it might have been that there also existed sufficient and constitutionally neutral reasons for her dismissal.

Thereafter defendants-appellees filed a motion for summary judgment against Ms. Downes supported by an affidavit of the project director, various exhibits and a brief. The exhibits showed Ms. Downes as a signer of the March 14, 1975 letter threatening the "sick out" and resignation; she had applied in February for annual and educational leave to attend a high school reunion and human sexuality workshop during the period March 26 through April 4, 1975; and defendant Beach on March 24, had denied all leave requests because of staffing problems.

Exhibits also included a March 28, 1975 letter from Beach and Doty to Downes indicating they accepted her verbal resignation, and were requesting the Colorado Department of Health to terminate her employment. The letter cited absences without proper notification as the reasons for the requested termination. Joan Truby, Director of Public Health Nursing, Colorado Department of Health, also sent a letter (Exhibit 5) to Downes, dated March 28, indicating possible disciplinary action due to improper absences. On April 24, 1975, Downes wrote to the Colorado Department of Health (with copies sent to Beach and Doty) and indicated that she considered herself constructively dismissed (Exhibit 6). A similar letter to Joan Truby was dated May 5, 1975 (Exhibit 7). The final document was a referee's decision of the Colorado Labor Department finding Ms. Downes had been constructively discharged and granting her full award benefits (Exhibit 8).

In response Downes submitted an affidavit declaring simply that she did not voluntarily resign, that she was forced into submitting a letter of separation by the action of the defendants, and that she would not have resigned but for the actions defendants took which indicated they no longer wanted her to work in their agency.

Following this exchange the trial court granted the defendants' motion for summary judgment. The key portion of its order was as follows:

Assuming that Plaintiff was wrongfully discharged, as found by the Referee, Defendants contend that they violated no First Amendment rights of Plaintiff.

That is the critical issue of this case. See *Mt. Healthy City School District Bd. of Ed. v. Doyle,* 45 U.S.L.W. 4079, 4082 [429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471] (Jan. 11, 1977). Plaintiff has set forth no facts to indicate that she was dismissed in violation of her First Amendment rights.

The instant situation is not one where there is a contractual right to continued employment, nor where the individual has tenure rights guaranteed under the state or federal law. We agree that the case is controlled by *Mt. Healthy City School Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), decided just two weeks before the trial court order granting the new trial to Ms. Downes. *Mt. Healthy* involved an untenured school teacher whose contract had not been renewed. The teacher had been involved in several disruptive incidents at school, and most recently had released to the local radio station the school principal's memorandum on teacher dress and appearance.

The Court held that a three-step process should be used to determine if the teacher's constitutional rights had been violated. The burden is on the plaintiff to show, first, that his or her conduct is constitutionally protected, and second, that the conduct was a substantial or motivating factor in his dismissal. Third, if the plaintiff satisfies this burden, the defendant must show "by a preponderance of the evidence that it would have reached the same decision as to . . reemployment even in the absence of the protected conduct." 429 U.S. at 287, 97 S.Ct. at 576.

The trial court considered the summary judgment motion against the backdrop of the *Mt. Healthy* decision. After reviewing the proffered affidavits, exhibits, and arguments, the trial court found that there remained no disputed material facts as to whether Downes' constitutional rights had been violated. The court put particular emphasis on Downes' failure to set forth in her affidavit opposing the motion any facts giving rise to a genuine dispute on the constitutional issue.

While it is true that matters in the record and all reasonable inferences to be drawn therefrom must be construed in favor of the party opposing a summary judgment motion,[1] Rule 56(e) of the Federal Rules of Civil Procedure indicates that the party against whom the motion is raised has a responsibility to demonstrate the existence of a material fact:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

With respect to the constitutional question, Downes did not set forth specific facts as contemplated by the rule. Downes nevertheless contends that the record of the previous trial, together with the court's order granting a new trial, demonstrated the existence of a factual controversy precluding summary judgment on the constitutional question. We must decide whether the court erred in not considering the record of the prior proceeding.

We recognize that courts have, on occasion, considered records of earlier trials in evaluating summary judgment motions. *See, e. g., United States v. Sinclair Ref. Co.,* 126 F.2d 827, 831 (10th Cir. 1942). We also recognize that this Circuit has announced that the court has the power to go beyond the parties' pleadings and evaluate evidence in the record to determine the appropriateness of summary judgment.

> While it is the duty of the trial court to grant a motion for summary judgment in an appropriate case, the relief contemplated by Rule 56 is drastic, and should be applied with caution to the end that the litigants will have a trial on bona fide factual disputes. Under the rule no margin exists for the disposition of factual

1. *Bruce v. Martin-Marietta Corp.,* 544 F.2d 442, 445 (10th Cir. 1976).

issues, and it does not serve as a substitute for a trial of the case nor require the parties to dispose of litigation through the use of affidavits. The pleadings are to be construed liberally in favor of the party against whom the motion is made, but the court may pierce the pleadings, and determine from the depositions, admissions and affidavits, if any, in the record whether material issues of fact actually exist. If, after such scrutiny, any issue as to a material fact dispositive of right or duty remains the case is not ripe for disposition by summary judgment, and the parties are entitled to a trial.

*Bushman Constr. Co. v. Conner,* 307 F.2d 888, 892–93 (10th Cir. 1962). The use of the word "may" in the *Bushman* opinion is significant. Our rule in that case permitted, but did not compel, the court to search beyond the evidence proffered in connection with the motion. While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not *required* to consider what the parties fail to point out.

We simply decline to place upon the court the litigant's burden of bringing to the court's attention the existence of a factual dispute. The party who has the most to lose if no genuine factual controversy is found is in the best position to demonstrate the existence of a dispute. If the party opposing the motion decides to forego submitting proof that a relevant factual dispute exists, he does so at his peril.[2]

The method by which the relevant facts are called to the court's attention is not rigid. It may be done by affidavit, reference to particular sworn testimony in a trial transcript, or by similar procedures. Whatever procedure is employed, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without relying on the trial court's

memory of prior proceedings and without depending on the trial court to conduct its own search of the record.

In this case, Downes contends that a genuine issue of fact could have been discovered by a review of the record of the prior trial. Downes did not draw the court's attention to the particular testimony or portions of the record that support her contention. She proffered only an affidavit that focused on an uncontested issue—whether she was discharged or whether she resigned. We cannot say the court had an obligation to uncover what Downes failed to produce. Whatever the record of the earlier trial may have contained, we decline to find that the court abused its discretion in refusing to conduct an independent search for a factual dispute. We therefore hold that summary judgment was properly entered.

---

2. It is conceivable, of course, that the party opposing the motion may succeed without making an effort to demonstrate the existence of a material fact dispute. This could arise if the movant fails to carry the burden of establishing the nonexistence of a dispute. *See Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); 6 Moore's Federal Practice ¶ 56.23, at 56–1387 (2d ed. 1948 Supp. 1976).