**FINANCIAL TIMING PUBLICATIONS, INC., successor in interest to The Money Advocate, Inc., a Minnesota corporation, Appellant,**

v.

**COMPUGRAPHIC CORPORATION, a Massachusetts corporation, Appellee.**

No. 89–5024.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1989.

Decided Jan. 9, 1990.

---

Robert A. Brunig, Minneapolis, Minn., for appellant.

James L. Harlow, Minneapolis, Minn., for appellee.

Before BEAM, Circuit Judge, and HEANEY and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

In this diversity case, Financial Timing Publications, Inc. (Financial Timing) appeals the district court's order granting summary judgment for Compugraphic Corporation (Compugraphic). Financial Timing brought suit in Minnesota state court, alleging negligence, breach of express warranty, breach of implied warranty of fitness for a particular purpose, and fraud against Compugraphic in connection with Compugraphic's sale of a computerized printing system to Financial Timing's corporate predecessor. Compugraphic re-moved the case to federal court and later moved for summary judgment on all counts, which the district court granted. On appeal, Financial Timing contends that the district court lacked subject matter jurisdiction because Compugraphic failed to comply with the removal procedure of 28 U.S.C. § 1446(a), (b) (1982). In the alternative, Financial Timing argues that even if the district court had subject matter jurisdiction, it erred in granting summary judgment for Compugraphic on the fraud claim. Financial Timing does not contest the district court's order of summary judgment on the other counts. We affirm the district court's ruling that it has subject matter jurisdiction, but reverse the summary judgment granted to Compugraphic on the fraud claim and remand for additional proceedings consistent with this opinion.

I.

Financial Timing, a Minnesota corporation, is the successor in interest to The Money Advocate, Inc. (Money Advocate), which published newsletters promoting the sale of coins. Compugraphic is a Massachusetts corporation that manufactures and sells computerized typesetting equipment.

In March of 1984, Clayton Makepeace and Mike Battis, Money Advocate employees, met with Tony Andrews, a Compugraphic sales representative, to discuss purchasing computer equipment and software to upgrade Money Advocate's publication process. Financial Timing contends that Andrews made several representations regarding the capabilities of Compugraphic's system that Makepeace and Battis relied upon in entering into purchase agreements for the system on March 28 and June 21, 1984. According to Financial Timing, the Compugraphic system did not perform as Andrews had promised, and as a result, the plaintiff incurred substantial damages.

On June 4, 1987, Financial Timing commenced this lawsuit by mailing a copy of the state court summons and complaint to Compugraphic pursuant to the state procedure for service of process by mail, *see*

Minn.R.Civ.P. 4.05. The complaint, on its face, set forth the facts that would permit a federal district court to exercise diversity jurisdiction under 28 U.S.C. § 1332 (1982).[1] Compugraphic acknowledged receipt of the summons and complaint on June 12, 1987, and filed its petition for removal, as allowed by 28 U.S.C. § 1441(a) (1982),[2] on July 17, 1987. On September 15, 1988, Compugraphic filed its motion for summary judgment, which the district court granted on November 29, 1988. This appeal followed.

## II.

Financial Timing argues that the district court did not have subject matter jurisdiction because Compugraphic failed to verify its removal petition, as required by 28 U.S.C. § 1446(a),[3] and did not file the petition with the district court within thirty days of its receipt of Financial Timing's summons and complaint, as required by 28 U.S.C. § 1446(b).[4] We disagree.

**1.** At the time Financial Timing mailed its complaint, 28 U.S.C. § 1332(a) provided that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between ... citizens of different States...." A corporation is considered a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c) (1982). Congress subsequently amended the diversity statute to require that the amount in controversy be $50,000, but this change is only applicable to civil actions commenced on or after the 180th day after November 19, 1988. See Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, § 201, 1988 U.S.Code Cong. & Admin.News (102 Stat.) 4642, 4646.

**2.** 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending."

**3.** At the time Compugraphic filed its removal petition, 28 U.S.C. § 1446(a) required the following:

A defendant ... desiring to remove any civil action ... from a State court shall file in the district court of the United States for the district and division within which such action

With regard to the verification issue, it is not clear that Compugraphic failed to meet 1446(a) requirements. The statute does not define what is necessary for a petition to be verified, see 1A Moore's Federal Practice ¶ 0.168[3.–4], at 570–71 (2d ed. 1989), and some courts have determined that the verification requirement is satisfied if the attorney simply signs the removal petition, as occurred in this case, see Greenspun v. Schlindwein, 574 F.Supp. 1038, 1040 n. 2 (E.D.Pa.1983); Border City Sav. & Loan Ass'n v. Kennecorp Mortgage & Equities, Inc., 523 F.Supp. 190, 192 (S.D.Ohio 1983); cf. City of Owatonna v. Chicago, Rock Island & Pac. R.R., 298 F.Supp. 919, 920 n. 3 (D.Minn.1969) (holding that defense counsel's statement in open court certifying truthfulness and accuracy of petition cured defect of failure to verify petition); H.R.Rep. No. 889, 100th Cong., 2d Sess. 71, reprinted in 1988 U.S. Code & Admin.News 5982, 6032 (noting that the 1988 amendment to 1446(a), which

is pending a verified petition containing a short and plain statement of the facts which entitle [the defendant] ... to removal together with a copy of all process, pleadings and orders served upon [the defendant] ... in such action.

In 1988 Congress changed the requirement in section 1446(a) of "a verified petition" to that of "a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure." See Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, § 1016(b), 1988 U.S. Code Cong. & Admin.News (102 Stat.) 4669. The 1988 amendment is inapplicable to this case because Compugraphic's thirty-day period to file its removal petition under 28 U.S.C. § 1446(b) had long passed on November 19, 1988, when the amendment became effective, making it impossible for Compugraphic to comply with the requirements of the amendment.

**4.** 28 U.S.C. § 1446(b) requires, in pertinent part, the following:

The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b) (1982).

eliminated the verification requirement, "is in keeping with general modern distaste for verified pleading"). Even if more than the attorney's signature is required for the petition to be verified, Financial Timing nevertheless cannot prevail on the verification issue because it has waived any objection to this alleged defect by not raising the issue before the district court.

Financial Timing did raise below the issue of Compugraphic's failure to file its petition within the thirty-day period specified in 28 U.S.C. § 1446(b), but the district court ruled that the plaintiff's prior actions constituted a waiver of this procedural defect. The evidence showing a waiver includes a letter dated July 14, 1987, from a Compugraphic attorney to Financial Timing's counsel confirming a telephone agreement that Financial Timing would not object to the removal on timeliness grounds. Also, the removal petition itself, filed two days later, states that Financial Timing agreed not to contest the timeliness of the petition. After receiving both the letter and the petition, Financial Timing failed to communicate to Compugraphic any disagreement with the letter and did not raise any objection before the district court regarding the statement in the petition that mentioned the prior agreement. Financial Timing participated without objection in a pretrial conference, engaged in discovery pursuant to the Federal Rules of Civil Procedure for over a year, subjected itself to the authority of a federal magistrate, and invoked the authority of the district court by appealing a magistrate's order. It was not until after Compugraphic had served and filed its motion for summary judgment that Financial Timing finally registered an objection to the timeliness of the petition. Given these circumstances, we find that the district court acted clearly within its broad discretion in holding that Financial Timing had waived its timeliness objection. *See, e.g., Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 905 (6th Cir.) (holding that district court did not abuse its discretion in finding that plaintiff had waived any objection to the untimeliness of the removal petition when she had engaged in affirmative activity in the dis-

trict court), *cert. denied*, —— U.S. ——, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988).

Financial Timing in fact acknowledges that its actions would constitute a waiver if the procedural requirements of section 1446 are waivable, but argues that these requirements are mandatory and thus preclude the district court from having subject matter jurisdiction notwithstanding the plaintiff's acquiescence in Compugraphic's late filing. Financial Timing's argument is without merit, for we have recognized that "[p]rocedural removal requirements ... are not jurisdictional, and thus a party may waive the right to object to removal on these grounds." *Nolan v. Prime Tanning Co.*, 871 F.2d 76, 78 (8th Cir.1989); *see also, e.g., Lanier*, 843 F.2d at 904.

Financial Timing also contends that because the district court was obligated to "examine the petition [for removal] promptly," 28 U.S.C. § 1446(c)(4) (1982), the obligation was on the district court, not the plaintiff, to take notice of procedural defects. The Supreme Court disposed of this argument long ago: "the court will not, of its own motion, inquire as to the regularity of the issue or service of the process, or indeed, whether there was any process at all, since it could be waived, in whole or in part, either expressly or by failing seasonably to object." *Mackay v. Uinta Dev. Co.*, 229 U.S. 173, 176, 33 S.Ct. 638, 639, 57 L.Ed. 1138 (1913).

Because Financial Timing, by its actions, waived its objections to Compugraphic's alleged failure to verify its removal petition and failure to file that petition within thirty days of receiving the complaint, we find that the district court properly exercised subject matter jurisdiction.

### III.

We next consider whether the district court erred in granting summary judgment for Compugraphic on the fraud claim. In support of the district court's decision, Compugraphic argues that (1) the manner in which Financial Timing submitted its supporting evidence did not satisfy the requirement of Federal Rule of Civil Proce-

dure 56(e) that the party opposing summary judgment "set forth specific facts showing that there is a genuine issue for trial," (2) Financial Timing failed to present admissible evidence establishing a genuine issue of material fact concerning the reliance element of its fraud claim, and (3) the fraud claim was barred by a provision in the sales contracts limiting the period of time for bringing causes of action. We address each of these arguments in turn.

## A.

In response to Compugraphic's motion for summary judgment, Financial Timing submitted a nine-page memorandum of law citing only the complaint and sales contracts, which were attached as exhibits to the complaint. At the hearing on the motion, the district court commented that the memorandum was inadequate support for Financial Timing's position and granted the plaintiff additional time "to provide citations of fact" from the record showing a genuine issue of material fact. Financial Timing's attorney later sent the district court a letter that read, in pertinent part, as follows:

Second, I said that I would provide you with those portions of the record which at a minimum create a genuine issue of material fact about Corporation's fraud. Some, but not all, are enclosed. Those enclosed are:

Plaintiff's Response to Defendant's First Set of Interrogatories.

Deposition of Daniel Enders (pages 1, 71–76, 80, 88–90, 95, 99, 102–09, 112–15, 120–25, 127–31, 151–52, 156–57, 171–72).

Deposition of William J. Ulrich (pages 1, 116, 202–03).

Financial Timing's attorney did not explain how any of the above-cited portions of the record, which accompanied the letter, related to its fraud claim.

The district court appears to have granted summary judgment primarily on the basis that the manner in which Financial Timing submitted its supporting evidence—by a letter that contained citations to the record with no substantive argument, accompanied by some eighty pages of interrogatories and depositions—did not comply with the requirement of Federal Rule of Civil Procedure 56(e) that the response to a motion for summary judgment "set forth specific facts showing there is a genuine issue for trial." [5] On appeal, Compugraphic defends the district court's refusal to search through pages of the record to ferret out Financial Timing's evidence and argument, citing cases such as *Downes v. Beach*, 587 F.2d 469 (10th Cir.1978), which indicate that "it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without relying on the trial court's memory of prior proceedings and without depending on the trial court to conduct its own search of the record," *id.* at 472.

We sympathize with the district court's frustration over the manner in which Financial Timing's attorneys argued their position, for even before this court, plaintiff's counsel primarily presented several pages of block quotations from the record without engaging in any substantive discussion of how those quotations related to Financial Timing's claim. The district court correctly determined that Financial Timing's initial memorandum of law, which relied solely upon averments in the pleadings, was insufficient to establish a genuine issue for trial. *See* Fed.R.Civ.P. 56(e) (noting that in opposing a motion for summary judgment, a party "may not rest upon the mere allegations or denials of [the party's] ... pleading"). We are unable to conclude, however, that the subsequently submitted letter and pages from the record were so grossly inadequate in bringing Financial Timing's supporting evidence to the district

---

5. Rule 56(e) states that when a motion for summary judgment has been properly made,

an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

court's attention as to warrant its granting summary judgment for Compugraphic without regard to the probative value of that evidence. Thus, we must turn to the record itself to determine if summary judgment was properly granted.

### B.

Compugraphic contends that summary judgment on the fraud claim was warranted because the record does not contain any admissible evidence establishing a genuine issue for trial on the element of reliance. Although Financial Timing alleges that Clayton Makepeace and Mike Battis relied upon Andrews's misrepresentations in deciding that Money Advocate should purchase the Compugraphic system, the plaintiff has not produced any direct testimony from Makepeace or Battis, by either deposition or affidavit, in support of this claim. Instead, Financial Timing has offered (1) deposition testimony of Dan Enders, a former Financial Timing employee who worked with Makepeace and Battis, and William Ulrich, the majority shareholder of Financial Timing, that Makepeace and Battis made the decision to purchase the Compugraphic system and later found that the system did not work as Andrews had promised; (2) interrogatory answers describing the alleged misrepresentations; and (3) a typed transcript, attached to the interrogatory answers, of an alleged April 26, 1985 meeting between a Compugraphic sales representative and Financial Timing employees, in which Makepeace and Battis complained that the Compugraphic system had not performed as Andrews had represented.

Compugraphic argues that all of Financial Timing's evidence relating to Makepeace's and Battis's complaints is inadmissible hearsay and that therefore the plaintiff has not met its burden of showing a genuine issue of material fact as to the reliance

element of its fraud claim. Compugraphic contends that in order to demonstrate a genuine issue for trial on the reliance element, Financial Timing needs direct testimony of either Makepeace or Battis, because those men were the individuals who allegedly heard the misrepresentations and made the decision to purchase the Compugraphic system.

■ In addressing Compugraphic's argument, we keep in mind that Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party may not rely solely on inadmissible hearsay in opposing a motion for summary judgment, but instead must show that admissible evidence will be available at trial to establish a genuine issue of material fact. *See Pink Supply Corp. v. Hiebert, Inc.,* 788 F.2d 1313, 1319 (8th Cir.1986); *Miller v. Solem,* 728 F.2d 1020, 1026 (8th Cir.), *cert. denied,* 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984).[6]

■ We recognize that the deposition testimony of Enders and Ulrich, the interrogatory answers, and the transcript of the April 26, 1985 meeting, to the extent that this evidence relates the statements of Makepeace and Battis, may be inadmissible hearsay, but this finding does not mandate summary judgment for the defendant on the fraud claim. For the purpose of its motion for summary judgment, Compugraphic stipulated to the existence of all the elements of Financial Timing's fraud claim except for reliance. The elements of fraud are as follows:

**6.** The Supreme Court's comment in *Celotex* that "[w]e do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment," 477 U.S. at 324, 106 S.Ct. at 2553, only signifies that the nonmoving party may rely on affidavits and other materials listed in

Federal Rule of Civil Procedure 56(c) and need not depose its own witnesses. The *Celotex* statement does not alter the rule that hearsay evidence alone may not defeat a summary judgment motion. *See Borecki v. Eastern Int'l Management Corp.,* 694 F.Supp. 47, 51 n. 5 (D.N.J.1988).

(1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance.

*Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 532 (Minn.1986).[7] Thus, we may assume for our analysis that if a jury heard the case today, it would have conclusive evidence that Andrews made intentional misrepresentations of material fact regarding the capabilities of the Compugraphic system to Makepeace and Battis for the purpose of inducing reliance. The jury would also have admissible testimony of Enders and Ulrich that Makepeace and Battis made the decision for Money Advocate to purchase the Compugraphic system. Given these two facts (a misrepresentation made to Makepeace and Battis followed by a purchase made by those two men), a jury could infer from Makepeace's and Battis's conduct that Money Advocate relied upon Andrews's misrepresentations in acquiring the system, even without testimony from Makepeace or Battis.[8] *See generally Davis v. Re–Trac Mfg. Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 39 (1967) (noting that the reliance element of fraud may be inferred from the plaintiff's conduct); *Witzig v. Philips*, 274 Minn. 406, 144 N.W.2d 266, 270 (1966) ("It is well established law that the defrauded party may testify directly as to the effect of the representations on his mind and whether or not he acted in reliance upon them. Nevertheless the facts and circumstances surrounding the situation are the best measure of whether there was reliance or not.") (citations omitted).

As additional support for its argument, Compugraphic points out that each of the sales contracts contains the following words:

> THIS AGREEMENT ... IS THE COMPLETE AGREEMENT BETWEEN THE PARTIES. CUSTOMER ACKNOWLEDGES THAT HE HAS READ THIS AGREEMENT, UNDERSTANDS IT, AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS. NEITHER PARTY SHALL BE BOUND BY ANY STATEMENT OR REPRESENTATION NOT CONTAINED IN THIS AGREEMENT.
>
> . . . .
>
> This Agreement ... is entered into after full investigation without either party relying on any statement or representation not contained in this Agreement.

Compugraphic contends that this contractual language was an admission by Money Advocate that it did not rely upon any representations made by Andrews. This provision, however, does not preclude the jury from considering other evidence that the plaintiff relied upon Andrews's alleged misrepresentation. *See Clements Auto Co. v. Service Bureau Corp.*, 444 F.2d 169, 178 (8th Cir.1971) (interpreting Minnesota

---

7. Because this is a diversity case, we apply the choice of law rules for Minnesota, the state in which the district court is located. *See Klaxon Co. v. Stentor Electric Mfg.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Although the sales agreements state that they are governed by the laws of the Commonwealth of Massachusetts, Compugraphic argued before the district court that a Minnesota state court applying the "better law" methodology of *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (1973), would honor the parties' contractual choice of law provision with respect to the breach of warranty claims, but would apply Minnesota law to the fraud claim. *See* Compugraphic's Memorandum in Support of Its Motion for Summary Judgment at 10 n. 3. Financial Timing appar-

ently agrees with Compugraphic's position, for the plaintiff relied exclusively on Minnesota caselaw in its appellate brief. We have not discerned any difference between Minnesota law and Massachusetts law that would affect the outcome in this case. To the extent that there is a difference, we hold that Minnesota authority should govern.

8. Clayton Makepeace may in fact be available to testify at trial. During oral argument Financial Timing's attorney indicated that Makepeace, whom neither party had been able to locate during the course of this litigation, was found after the district court entered its summary judgment order.

law as holding that "a general disclaimer clause is ineffective to negate reliance on even innocent misrepresentations"); *General Corp. v. General Motors Corp.*, 184 F.Supp. 231, 235 & n. 2 (D.Minn.1960) (holding that under Minnesota law, a merger clause stating that "[t]here are no other agreements or understandings either oral or in writing" does not bar plaintiff from presenting parol evidence that he relied upon defendant's misrepresentations not contained in the contract); *Ganley Bros., Inc. v. Butler Bros. Bldg. Co.*, 170 Minn. 373, 212 N.W. 602 (1927) (holding that a contractual provision stating that a party has not relied on any statement of the other party does not preclude introduction of evidence showing that fraudulent statements were made that induced reliance). We believe that a reasonable jury could find that, notwithstanding the contractual language, Money Advocate justifiably relied upon Andrews's representations.

Although inadmissible hearsay, standing alone, cannot defeat a motion for summary judgment, our analysis is influenced by the evidence in the record suggesting that Makepeace and Battis did rely on Andrews's misrepresentations concerning the capabilities of the Compugraphic system. We have noted that "[s]ummary judgment is an extreme remedy and is not to be granted unless the moving party has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Mandel v. United States*, 719 F.2d 963, 965 (8th Cir.1983). Consequently, when the party opposing summary judgment offers a significant amount of inad-missible evidence favoring its position, as Financial Timing has done here, we are reluctant to grant the motion if the party also has admissible evidence supporting its claim of a genuine issue for trial.

We conclude, therefore, that in light of Compugraphic's stipulation that all the fraud elements except for reliance exist, there is sufficient admissible evidence from the testimony of Enders and Ulrich to establish a genuine issue of material fact regarding reliance. Before we may reverse the district court's granting of summary judgment, however, we must find that the period of limitations provision contained in the contracts does not preclude Financial Timing's cause of action. It is to this final issue that we now turn.

## C.

■ Each sales contract has the following provision limiting the time for commencement of causes of action:

> No action, regardless of form, may be brought by either party more than one (1) year after the cause of action has arisen, except that an action for non-payment may be brought within one (1) year of the last payment, and Compugraphic may bring an action relating to software at any time.

Compugraphic argues that this clause bars Financial Timing's fraud claim because the plaintiff brought suit more than a year after the cause of action arose. Financial Timing responds that the limitations provision applies only to causes of action based on the contract and not to a claim which alleges fraud in the inducement and seeks rescission of the contract.[9] The plaintiff

---

**9.** Financial Timing also argues that Compugraphic waived its limitations defense by failing to assert this defense in its answer to the complaint, as required by Federal Rule of Civil Procedure 8(c). Although the answer alleged that the complaint was barred by the "applicable statute of limitations," the plaintiff contends that because the answer did not specifically refer to the contractual limitations provision, Compugraphic cannot rely on this provision for its defense. We disagree. When an affirmative defense "is raised in the trial court in a manner that does not result in unfair surprise, ... technical failure to comply with Rule 8(c) is not fatal." *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir.1983). Compugraphic explicitly informed Financial Timing on two occasions that it would seek to dismiss the action on the grounds that all claims were barred by the one-year contractual period of limitations: first, in Compugraphic's response to Financial Timing's first set of interrogatories served on November 12, 1987; and second, in Compugraphic's memorandum in support of its motion for summary judgment on September 15, 1988. These notices were sufficient to avoid unfair surprise.

contends that its allegation of fraud in the inducement vitiates all contractual terms, including the provision limiting the period of time for commencing a lawsuit.

Compugraphic attacks Financial Timing's argument by offering *Atcas v. Credit Clearing Corp. of America*, 292 Minn. 334, 197 N.W.2d 448 (1972), which dealt with whether a claim of fraud in the inducement vitiated a contractual clause requiring that causes of action be arbitrated. We have not found any Minnesota decisions dealing with the issue of whether a contractual provision limiting the period for commencing a lawsuit may apply to a fraud claim, but we are persuaded that by analogy a Minnesota court would follow the *Atcas* reasoning here. In both *Atcas* and this case, the central question is whether a claim of fraud in the inducement allows a plaintiff to avoid the effects of a contractual provision that would otherwise preclude the claim from being litigated in court. *Atcas* resolved this question, at least to the extent that it deals with arbitration clauses, by devising two requirements that must be met by the plaintiff before its fraud claim can be heard by a court. First, the contractual language must neither "evince[ ] an intent of the parties to specifically arbitrate the issue of fraud in the inducement" nor be "sufficiently broad to comprehend that the issue of fraudulent inducement be arbitrated." 197 N.W.2d at 456. Second, the plaintiff "must properly proceed to avoid the agreement; that is, he must seek rescission but not damages, and he cannot rescind in part and affirm in part." *Id.* Applying the *Atcas* reasoning to this case, we hold that Financial Timing can avoid the effects of the limitations provision if (1) the contractual language neither shows that the parties intended to subject claims of fraud to a one-year period of limitations, nor is sufficiently broad to comprehend that the fraud claim be subject to a one-year period of limitations; and (2) the plaintiff has properly complied with the requirements for seeking rescission.

### 1.

■ We first address the question whether the limitations provision reflects an intent to limit the time for commencing a fraud claim or is worded sufficiently broad to limit the period of time for bringing this claim.

*Atcas* and subsequent Minnesota state court cases required that the contractual language be *very* specific in specifying that a claim of fraud in the inducement be subject to arbitration if that claim is to be arbitrable. For example, the Minnesota Supreme Court in *Atcas* "held that the language, '[a]ny controversy whatsoever, relating to this Agreement shall be settled by arbitration' expressed no intent by the parties to arbitrate the issue of fraud in the inducement, 'nor [did] the language used in the agreement comprehend arbitration of that issue.'" *Michael–Curry Cos. v. Knutson Shareholders Liquidating Trust*, 434 N.W.2d 671, 674 (Minn.Ct.App.1989) (quoting *Atcas*, 292 Minn. at 347–48, 197 N.W.2d at 456); *see also Thayer v. American Fin. Advisors, Inc.*, 322 N.W.2d 599, 602 (Minn.1982) (holding that the language "any claim, grievance or controversy between us arising out of your business or this agreement shall be settled by arbitration" did not subject fraud claim to arbitration); *NCR Credit Corp. v. Park Rapids Leasing Assocs.*, 349 N.W.2d 867, 868 (Minn.Ct.App.1984) (holding that the language "[a]ny controversy or claim, including any claim of misrepresentation, arising out of or related to this Agreement ... shall be settled by arbitration" did not render fraud claim arbitrable); *cf. Freeman v. Duluth Clinic*, 334 N.W.2d 626 (Minn.1983) (holding that the language "[a]ll disputes or differences that may arise under this agreement shall be submitted to arbitration for decision" did not require arbitration for claim of lack of consideration).

Only recently has there been a reported Minnesota case in which the court found that the language of an arbitration clause was sufficiently broad to render a fraud claim arbitrable. In *Michael–Curry*, the Minnesota Court of Appeals held that the language "[a]ny controversy or claim arising out of, or relating to, this Agreement, or the making, performance or interpretation thereof, shall be settled by arbitration"

required arbitration for a fraud claim because the language included the word "making," which the court considered to be a reference to events, such as fraud, which occurred before the agreement was signed. *See* 434 N.W.2d at 676. The dissent contended that the contractual language was not sufficiently broad to encompass arbitration for a fraud claim, arguing that Minnesota Supreme Court decisions require that "the issue of fraud must be mentioned in the arbitration agreement as one of the issues to be arbitrated" if the fraud claim is to be arbitrated. *See id.*

We have no reason to believe that Minnesota state courts would be any more receptive to finding the language of a limitations provision sufficiently broad to encompass a fraud claim than they have been in determining that the wording of arbitration clauses applies to fraud claims. A Minnesota court might, in fact, be more reluctant to find that a limitations provision applied to a fraud claim than it would be to find that an arbitration clause encompassed such a claim. Applying an arbitration clause to a fraud claim would at least still allow the claim to be considered by a third-party tribunal. In contrast, the effect of a limitations clause would be to preclude *any* opportunity for redress of the plaintiff's fraud claim, even though the statutory limitations period for bringing the claim has not passed. Thus, the Minnesota Supreme Court has stated that

> [t]he parties to a contract may limit the time within which an action may be brought to a period less than that fixed by the general statutes of limitation provided the limitation is not unreasonably short, but such provisions are not especially favored and are construed strictly against the party invoking them.

*Prior Lake State Bank v. National Sur. Corp.,* 248 Minn. 383, 80 N.W.2d 612, 616 (1957); *see also Dechter v. National Council of Knights & Ladies of Sec.,* 130 Minn. 329, 153 N.W. 742, 744 (1915) (noting that limitations provisions "should be construed with strictness against the party invoking them").

Examining the limitations provision in light of Minnesota caselaw, we are unpersuaded that this provision evinces an intent to apply to a fraud claim or is sufficiently broadly worded to render the claim arbitrable. Although the contractual language contains broad terms ("No action, regardless of form, may be brought by either party...."), the provision neither (1) makes reference to events prior to the time of the signing of the contract nor (2) explicitly mentions the claim of fraud in the inducement as being subject to the limitations requirement—factors that either the majority or dissenting opinions in *Michael–Curry* considered necessary to render a fraud claim subject to an arbitration clause. We thus conclude that Financial Timing has met the first requirement that the contractual language neither evince an intent nor be sufficiently broad to require that the limitations provision apply to a fraud claim.

2.

■■■ We now turn to the second requirement for avoiding the effects of the limitations provision. This requirement is that the plaintiff comply with all of the requirements for seeking rescission of the contract in toto.

Compugraphic argues that Financial Timing cannot properly seek rescission because the plaintiff is no longer in possession of the computer equipment and software that Compugraphic sold to it. The defendant contends that Financial Timing's inability to return the computer equipment and software to Compugraphic prevents the plaintiff from satisfying the general requirement of rescission that each party be restored to the position it was in before the contract was formed. According to Compugraphic, the plaintiff can only seek damages, and because this form of remedy would require an affirmation of the contract, Financial Timing is bound by the terms of the limitations clause.

We agree that right of rescission usually requires that the plaintiff be able to return the property received from the defendant. *See, e.g., Liebsch v. Abbott,* 265 Minn. 447, 122 N.W.2d 578, 581 (1963) ("The general

rule is that a party who wishes to rescind an agreement must place the opposite party in status quo."); *Village of Wells v. Layne–Minnesota Co.*, 240 Minn. 132, 60 N.W.2d 621, 625 (1953) ("It is the general rule that a party seeking rescission must as a condition precedent return or offer to return that which he has received under the contract in order to restore the parties to the positions which they occupied prior to the transaction."). However, Minnesota courts have recognized certain exceptions to this general rule. One of these exceptions is that a plaintiff seeking rescission need not return the property if restoration is impossible because of the defendant's own wrongful actions. *See, e.g., Beck v. Spindler*, 256 Minn. 565, 99 N.W.2d 684, 685 (1959); *McCarty v. New York Life Ins. Co.*, 74 Minn. 530, 77 N.W. 426, 428 (1896).

The district court found that Financial Timing's lack of possession of the computer equipment and software precluded the plaintiff from seeking rescission, but did not decide whether any of the exceptions to the restoration requirement were present in this case. On appeal, Financial Timing contends that it demanded rescission from Compugraphic as soon as it became obvious that the computer equipment did not perform as represented. Financial Timing asserts that it possessed all of the equipment and software at the time rescission was demanded, but Compugraphic refused the demand. According to the plaintiff, on March 1, 1988, Instant Webb, Inc.—a creditor of Financial Timing and of Financial Timing's parent corporation, Angela Corporation—foreclosed on the equipment, which the creditor then sold to First Financial Holding Group, Inc. Financial Timing argues that Compugraphic's misrepresentations regarding the equipment and the defendant's failure to rescind was a cause of financial difficulty for the plaintiff and contributed to Instant Webb's foreclosure. If Financial Timing's allegations that Compugraphic substantially caused the plaintiff to lose possession of the equipment and software are true, then Financial Timing would be able to obtain rescission without having to return the property to the defendant. We remand for factfinding by the district court on this issue of whether rescission is available notwithstanding Financial Timing's inability to return the property. If the district court determines that rescission is available, then Financial Timing would have satisfied both of the *Atcas* requirements for its claim of fraud in the inducement to vitiate the terms of the limitations provision. Summary judgment would therefore not be warranted on the fraud claim.

IV.

In summary, we (1) hold that the district court properly exercised subject matter jurisdiction; (2) affirm the order granting summary judgment on the claims of negligence, breach of express warranty, and breach of implied warranty for a particular purpose; but (3) reverse the order granting summary judgment on Financial Timing's fraud claim and remand for further proceedings consistent with this opinion.