Julia SCHAFFRATH and Mike Schaffrath, Legal Guardians for and on Behalf of R.J.J., a minor, Plaintiffs,

v.

Chris THOMAS, Penny Heal Trask, Department of Human Services, Division of Family Services, D. Michael Stewart, B.D. Stedman, Lynn A. Samsel, Timothy C. Holm, Gerald Cox, Stephanie Mcneil, John Does 1 through 10, Guardian Ad Litem Office, & The State of Utah, Defendants.

No. 2:96 CV 0698.

United States District Court, D. Utah, Central Division.

Jan. 28, 1998.

844

Loren Lambert, Richards, Packard & Lambert, Salt Lake City, UT, for Mike and Julia Schaffrath.

Harold Christensen, Snow, Christensen & Martineau, Salt Lake City, UT, for Penny Trask, Guardian ad Litem Office.

Elizabeth King, Salt Lake City, UT, for Division of Family Services, Lyn Samsel, Stephanie McNeil.

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DIVISION OF FAMILY SERVICES, LYNN A. SAMSEL, STEPHANIE MCNEIL, AND MOTION FOR SUMMARY JUDGMENT OF PENNY HEAL TRASK, AND MOTION FOR SUMMARY JUDGMENT OF GUARDIAN AD LITEM OFFICE**

KIMBALL, District Judge.

Each of the five defendants that has been served with a copy of the complaint filed for summary judgment. Their motions and various ancillary motions were considered together and argued before the Court on January 21, 1998. Loren Lambert appeared on behalf of Plaintiffs Mike and Julia Schaffrath.

Harold Christensen appeared on behalf of Defendants Penny Trask and the Guardian ad Litem Office. Elizabeth King appeared on behalf of the Division of Family Services, Lyn Samsel, and Stephanie McNeil. The Court has carefully considered all pleadings, memoranda, and other materials submitted by the parties, and the arguments advanced by the parties at oral argument. Now being fully advised, the Court enters the following memorandum decision and order.

## I. BACKGROUND

Plaintiffs Mike and Julia Schaffrath, on behalf of their nephew, R.J.H., filed this suit on August 15, 1996. Julia Schaffrath and Jennie Harkness, R.J.H.'s mother, are sisters. At the time of the tragic events in question, R.J.H. was five years old. Because of his mother's dependence on illegal substances, the Schaffraths were caring for R.J.H. While the Division of Family Services was aware of this situation and helped arrange it, the Schaffraths understood that R.J.H.'s mother still maintained legal custody and control of R.J.H. In early August 1994, the Schaffraths received a call from R.J.H.'s mother, who demanded that they give R.J.H. to her. Believing they were powerless to do otherwise, the Schaffraths complied, taking R.J.H. to Jennie where she was staying with R.J.H.'s grandmother, Leila Olson, whose history of alcoholism and abuse was well known to Julia.

One week later, on August 16, 1994, Leila Olson called the police, saying that R.J.H. had been left there and that she was unable to care for him and did not want him in her home. Leila Olson appeared intoxicated to the officers who came to her home. The officers left with R.J.H. The next day, Defendant Stephanie McNeil, a DFS social worker, was assigned to R.J.H.'s case. On that same day, she visited Leila Olson, who was intoxicated when she arrived. The following day, DFS staff met to discuss R.J.H. and determined to place him in the Salt Lake County Shelter until a family site evaluation study could be performed. Penny Trask, a lawyer appointed to serve as R.J.H.'s guardian ad litem opposed returning R.J.H. to the Schaf-

fraths, given her belief that they had knowingly placed him in an unsafe environment.

While at the Salt Lake County Shelter pending performance of the family site evaluation study, R.J.H. was beaten and sexually abused by a thirteen-year-old boy named Gerald Cox. Cox was subsequently convicted of one count of sodomy and one count of sexual abuse.

The Schaffraths filed this suit under 42 U.S.C. § 1983 against a number of institutional and individual defendants. Each individual is sued in both his or her official and individual capacity. The Schaffraths also asserted claims of legal malpractice against Penny Trask and the Guardian ad Litem Office, of negligent supervision of Gerald Cox against John Does 1 through 10, and of assault and battery against Gerald Cox. Many of the named defendants have never been served.

## II. STANDARD OF REVIEW

A motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure* is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant bears an initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case. If the movant carries this initial burden, the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element. "An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant." *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir.1995). In applying the summary judgment standard, the factual record and reasonable inferences therefrom are to be examined in the light most favorable to the non-movant. *Id.*

## III. DISCUSSION

### A. Dismissal of Defendants who have Never Been Served.

As a preliminary matter, all claims against John Does 1 through 10, Chris Thomas, Ger-

ald Cox, Michael Stewart, B.D. Steadman, Timothy Holme, the State of Utah, and the Department of Human Services are dismissed without prejudice pursuant to Rule 4(m) of the *Federal Rules of Civil Procedure*, since they have not been served and far more than 120 days have elapsed since the complaint was filed.

### B. Actions Barred by the Eleventh Amendment.

Each of the institutional defendants asserts that this action is barred by the Eleventh Amendment, which bars actions against states or state agencies by their citizens in federal court. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). *Plaintiffs concede that this action is barred against the Guardian ad Litem Office, but claim that DFS is a political subdivision to which Eleventh Amendment immunity does not extend.*

"In determining whether an agency is protected by the Eleventh Amendment ... the critical inquiry is whether the entity 'is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend.'" *Meade v. Grubbs*, 841 F.2d 1512, 1525 (10th Cir.1988) (*quoting Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977)). "Such a determination is made by examining the powers, nature and characteristics of the agency under state law." *Id.* Plaintiffs have not provided any analysis of the powers of DFS upon which this court could base a denial of Eleventh Amendment immunity. It is clear, however, that the DFS acts as an arm of the State and is, therefore, entitled to immunity.

Defendant Lyn Samsel and Stephanie McNeil assert that action against them in their official capacities as DFS employees is also barred by the Eleventh Amendment. "The immunity under the Eleventh Amendment remains in effect when state officials are sued for damages in their official capaci-

ty." *Eastwood v. Dep't of Corrections,* 846 F.2d 627, 632 (10th Cir.1988). "As the Supreme Court has noted, suing officials in their official capacity represents only another way of pleading an action against the entity of which an officer is an agent." *Id. (internal quotation marks and citation omitted).* According, Plaintiffs' claims for damages against these two defendants in their official capacities is also dismissed.

### C. "Persons" under § 1983.

■ Each of the institutional defendants also asserts that this action is barred on the ground that institutions are not "persons" under § 1983. Defendants are clearly correct. The Supreme Court has ruled that states and their agencies are not "persons" for purposes of § 1983 analysis. *Will,* 491 U.S. at 64, 109 S.Ct. at 2308. Defendants Samsel and McNeil assert that action against them in their official capacities as DFS employees is also barred on this ground, and, again they are correct. "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will,* 491 U.S. at 71, 109 S.Ct. at 2312.

### D. "State Action" under § 1983.

Defendant Penny Trask asserts that Plaintiffs have failed to establish a claim against her under § 1983 inasmuch as a guardian ad litem does not act under color of state law for purposes of that section. Indeed, controlling Tenth Circuit authority holds that guardian ad litems do not act under color of law for purposes of § 1983 because they have duties of undivided loyalty to their clients and must be allowed to satisfy their ethical obligations to exercise independent judgment on behalf of their clients. *Meeker v. Kercher,* 782 F.2d 153, 155 (10th Cir.1986). In response, Plaintiffs allege that Trask failed her duty to exercise independent, professional judgment and instead relied on information provided by DFS staffers and acquiesced in their judgments.

■ In the absence of evidence that Trask abandoned her duty of professional loyalty to R.J.H. by engaging in an actual conspiracy

with state actors to deprive him of constitutional rights, the fact that Trask may have failed her duty to exercise independent, professional judgment does not make her a state actor. "[T]he only proper defendants in a Section 1983 claim are those who represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *Jojola v. Chavez,* 55 F.3d 488, 492 (10th Cir.1995) *(internal quotation marks and citation omitted).* Plaintiffs have failed their burden to establish, by affidavit or other evidence, a factual basis for any conspiracy between Trask and another state actor. *See Downes v. Beach,* 587 F.2d 469, 472 (10th Cir.1978) *(noting that party responding to motion for summary judgment has burden of showing factual dispute with particularity).* As a consequence, Plaintiffs' § 1983 claims against Trask fail as a matter of law. As there is no independent jurisdictional basis for the state law claim of malpractice, that claim is dismissed without prejudice, leaving the Plaintiffs no federal action against either Trask or the Guardian ad Litem Office.

### E. Assertion of Qualified Immunity.

■ Defendants Samsel and McNeil assert that they are entitled to qualified immunity to the extent they may have liability in their individual capacities. Qualified immunity is available unless an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982) *(quoting Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)). The presence or absence of qualified immunity is a question of law. *Langley v. Adams County,* 987 F.2d 1473, 1476 (10th Cir.1993).

■ Once the defense of qualified immunity is raised, the burden shifts to Plaintiffs to demonstrate: (i) that the defendants' actions violated a constitutional or statutory right, and (2) that the right allegedly violated was clearly established at the time of the conduct

at issue. *Mick v. Brewer,* 76 F.3d 1127, 1134 (10th Cir.1996). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992). Once the defense has been raised, a heightened standard of pleading applies to the Plaintiffs, who must make specific factual allegations demonstrating a deprivation of federal rights. *Sawyer v. County of Creek,* 908 F.2d 663, 667 (10th Cir.1990).

Plaintiffs assert that the individual defendants breached R.J.H.'s civil rights by failing "to make appropriate inspections of a facility run by a civil rights defendant." Plaintiffs refer to no controlling precedent that deliniates such right, and have not, therefore, met their burden to demonstrate that the law was clearly established when the violation occurred. Even if they had properly deliniated the constitutional right at issue, Plaintiffs have not set forth specific acts of the defendants in violation of it. "Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). In this case, Plaintiffs have neither alleged nor produced any evidence of specific acts by each defendant that violated R.J.H.'s rights, and, accordingly, have not raised a material issue of fact concerning the individual defendants' involvement. Therefore, Plaintiffs have not defeated the individual defendants claims of qualified immunity.

■ Defendant Samsel had no involvement with DFS at the time of the facts at issue. Defendant Samsel served as director of DFS beginning in 1993 and continuing until January 14, 1994. The events at issue occurred in August 1994. Given these circumstances, this Court finds as a matter of law that Defendant Samsel did not violate a constitutional right of R.J.H. Therefore, Plaintiffs' claims against Defendant Samsel as an individual are barred, leaving no claims against Defendant Samsel.

■ Defendant McNeil has stated under oath that she was not aware of any problems or complaints regarding the Salt Lake County Shelter at the time R.J.H. was placed there. She has stated further that she had no supervisory authority over the daily activities of the staff there. This statement was confirmed under oath by Mary Noonon, the current DFS director. There is simply no evidence in the record showing that McNeil had any duty or authority to inspect the Salt Lake County Shelter. The record is similarly devoid of any evidence that McNeil was aware or should have been aware that R.J.H. was at risk there. According to Julia Schaffrath's own affidavit, she voiced her concerns about R.J.H.'s welfare to a shelter staffer, not to McNeil or any of the other named defendants. Accordingly, Plaintiffs' claims against McNeil in her individual capacity are also barred, leaving no claims against her.

F. Plaintiffs' Rule 56(f) Motions.

■ Plaintiffs responded to the motion for summary judgment of DFS, Samsel, and McNeil by requesting an extension of time to conduct discovery of the records of the Salt Lake County Shelter and DFS relating to R.J.H. and discovery of the individuals who participated in the decision to place R.J.H. at the Salt Lake County Shelter. Plaintiffs have not adequately explained either why such discovery had not been previously pursued or, more critically in this case, how it would defeat the outstanding motions for summary judgment. Such discovery is not calculated to produce evidence that would negate the institutional defendants entitlement to immunity under the Eleventh Amendment or their lack of status as "persons" under § 1983, nor is it calculated to produce evidence negating Defendant Samsel's complete lack of official or personal involvement in the events at issue.

Such discovery seems more calculated to uncover evidence, to the extent it exists, that Defendant McNeil was aware that the Salt Lake County Shelter was unsafe for R.J.H.

However, Plaintiffs' request must be considered in the specific context in which it arises. Plaintiffs seek an extension to gather evidence to overcome a qualified immunity defense. "Unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial." *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988). The defense strikes a balance between allowing plaintiffs to "discover the precise factual basis for their claim through liberal discovery processes" and protecting us "from having the work of our public officials chilled or disrupted by participation in the trial *or* the pretrial development of civil lawsuits." *Id.* at 650*(emphasis in original).*

In such circumstances, courts refuse to allow continued discovery: "A federal lawsuit is not a fishing expedition. Were we to permit [Plaintiffs'] complaint to continue in its present form, we would defeat the rationale for the qualified immunity defense." *Sawyer,* 908 F.2d at 668. It is apparent to this Court, given Plaintiffs' failure to identify properly a clearly established right, Plaintiffs' undisciplined assertion of numerous and conflicting theories of liability, Plaintiffs lack of diligence in pursuing this litigation, as evidenced by their failure to serve numerous defendants and their failure to pursue discovery, that Plaintiffs have no factual basis for asserting claims against McNeil that might defeat her entitlement to qualified immunity. Accordingly, Plaintiffs' motion for an extension to pursue further discovery concerning DFS, Samsel, and McNeil is denied.

■ Plaintiffs responded to Defendant Trask's motion for summary judgment by requesting an extension of time to conduct discovery to gather evidence showing that Trask "did not perform the role as an independent attorney on behalf of the plaintiff R.J.H. and that she in essence 'consented with' and 'joined with' the State actors depriving R.J.H. of his constitutional rights." Towards this end, Plaintiffs requested time to investigate whether Trask was properly licensed to practice law in Utah. As explained above, even if Trask was improperly licensed,

that fact would neither render her a state actor nor, as Plaintiffs suggest, somehow mean that she engaged in a conspiracy with state actors to violate R.J.H.'s constitutional rights. Accordingly, Plaintiffs' motion for an extension to conduct discovery concerning Trask is also denied.

### G. Other Outstanding Motions.

Both sides have various motions to strike pending. These motions concern portions of affidavits that are not relevant to this Court's decision to grant the motions for summary judgment. Because that decision renders them moot, they will not considered.

## IV. CONCLUSION

For the reasons set forth above, the motions for summary judgment of Division of Family Services, Lynn A. Samsel, Stephanie McNeil, Penny Heal Trask, and Guardian ad Litem Office are granted. This case is, accordingly, dismissed in its entirety.